540 P.2d 875

**STATE of New Mexico, Plaintiff-Appellant,**

v.

**Donald RASCON, Defendant-Appellee.**

**No. 1780.**

Court of Appeals of New Mexico.
Aug. 6, 1975.

Certiorari Granted Sept. 11, 1975.

James L. Brandenburg, Dist. Atty., James F. Blackmer, Asst. Dist. Atty., Albuquerque, for plaintiff-appellant.

Jerome M. Ginsburg, Santa Fe, for defendant-appellee.

## OPINION

HENDLEY, Judge.

The state appeals an order suppressing statements given by defendant to officers of the Albuquerque Police Department. The question to be decided is whether failure to notify the Public Defender's Office that a person is being forcibly detained, under the mandate of § 41–22A–12(C), N.M.S.A.1953 (2d Repl. Vol. 6, 1972, Supp. 1973), constitutes grounds for suppression of statements taken during such forcible detention. We affirm.

The facts disclosed by the record, although somewhat confusing, are not in serious dispute. It appears that on June 15, 1974, defendant was allegedly involved in an assault with intent to rape. On June 16, 1974, Detective Baca of the Albuquerque Police Department was assigned to the case. On June 20, 1974, upon completion of his investigation, Baca obtained an arrest warrant, served it on the defendant and took him into custody. On that day, after twice being advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), and, after having signed a waiver of those rights, defendant made oral and written statements concerning his involvement in the offense. A criminal complaint was also sworn out on June 20, 1974. The record does not indicate whether this was before or after the making of the statements nor does it indicate when the complaint was filed. We will assume a proper chronology.

The confusion in this case concerns defendant's representation by the Public Defender's Office. The transcript of the hearing on the motion to suppress reveals that Assistant Public Defender, John Walker, was somehow assigned to the case

on June 18, 1974. He immediately called the jail in order to ascertain whether the defendant had been taken into custody. Learning that defendant was not yet in jail, Walker called again three days later, at which point defendant had already been in custody for one day and had given the statements which underlie the motion to suppress. Walker appeared at defendant's arraignment and represented him thereafter.

The record indicates that neither the defendant nor Detective Baca knew that Walker had been assigned to the case at the time of the arrest or of the giving of the statements. Indeed, how Walker knew of the case or thought of himself as defendant's attorney is still a complete mystery despite the fact that fully two-thirds of the transcript is devoted to a colloquy between Walker, the trial court and the state's attorney attempting to answer that question. However, it is undisputed that the Public Defender was not called or notified that defendant was being forcibly detained.

Section 41–22A–12, N.M.S.A.1953 (2d Repl. Vol. 6, 1972, Supp.1973) reads as follows:

"41–22A–12. *Explanation of rights— Waiver of counsel.*—A. If any person charged with any crime that carries a possible sentence of imprisonment appears in any court without counsel, the judge shall inform him of his right:

"(1) to confer with the district public defender; and

"(2) if he is financially unable to obtain counsel, to be represented by the district public defender at all stages of the proceedings against him.

"B. Following notification of any person under subsection A of this section, the judge shall notify the district public defender and continue the proceedings until the person has conferred with the district public defender.

"C. Peace officers shall notify the district public defender of any person not represented by counsel who is being forcibly detained and who is charged with, or under suspicion of, the commission of any crime that carries a possible sentence of imprisonment, unless the person has previously appeared in court upon that charge.

"D. Any person entitled to representation by the district public defender may intelligently waive his right to representation. The waiver may be for all or any part of the proceedings. The waiver must be in writing and countersigned by a district public defender."

The trial court's order granting defendant's motion to suppress stated:

"* * * that although the Defendant was advised of his rights, the investigating officer never notified the Public Defender's Office that the Defendant was in custody as required by the provisions of Section 41–22A–12 ([C]), NMSA 1953, 1973 Supp."

The state acknowledges that the police made no attempt to comply with § 41–22A–12(C), supra. Rather, the state argues that there is no requirement for notification of the Public Defender's Office prior to initial appearance. The state bolsters its argument with a plethora of potential complications having nothing to do with the instant case. They mainly concern conflict of interest situations which are simply not present in defendant's case. Should such a situation arise, we will decide it at that time. The state also complicates the instant case by presenting a number of hypothetical dilemmas relating to § 41–22A–12(D), supra. However, we need not resolve them because we decide the case on the narrower ground of a violation of § 41–22A–12(C), supra. In any event, the state's arguments are all commentary on the wisdom of the statute. We express no opinion on the wisdom of the statute. That task is for the legislature and its conscience.

■ The state neither contends that there was compliance with the statute nor

does it seriously contend that the statute is unconstitutional. Its argument is that rights designed to be protected by the mechanism of § 41–22A–12(C), supra, are protected in other ways. Hence, compliance therewith is unnecessary. Again, this argument should be addressed to the legislature. It is fundamental that this court does not sit to substitute its judgment for that of the legislature. *Village of Deming v. Hosdreg Company,* 62 N.M. 18, 303 P.2d 920 (1956).

We are not concerned here with the normal constitutional rights. Those rights of defendant have been amply protected. For example, the record discloses an exhibit twice signed and multi-initialed by defendant entitled "ADVICE OF RIGHTS YOUR CONSTITUTIONAL RIGHTS" —it reads, omitting the initialing and signing, in part as follows:

"Before we ask you any questions, you must understand your constitutional rights.

"I am a member of the Albuquerque Police Department and our Department is investigating (crime) *ATTEMPTED RAPE* which occurred at *2519 New York N. W. # 50* on the *20th* day of *June* at approximately 0130 AM PM

"You have the right to remain silent.

"Anything you say can be used against you in court.

"You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer present with you while we ask you questions.

"If you cannot afford a lawyer, one will be appointed at no cost to you before we ask you any questions, if that is your desire.

"If you decide to answer questions now, without a lawyer present, you will still have the right to stop answering my questions at any time. You also have the right to stop answering my questions at any time until you talk to a lawyer for advice.

"I have been advised of and understand my constitutional rights.

"I have read and understand my constitutional rights."

"WAIVER OF RIGHTS

"I have read this statement of my rights, and understand what my constitutional rights are. (I have been advised of and understand my constitutional rights in this matter).

"I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

What we are concerned with are the additional statutory rights granted by the legislature. Under the facts of the instant case we have a violation of a specific statutory mandate under subsection C. True it does not specify when the Public Defender must be called, however, in light of the mandate of subsection D it is obvious that it is before the waiver is signed if the defendant is indigent. Here, the defendant was indigent. The question is whether suppression of the statements is an appropriate remedy. Our answer is in the affirmative.

■ The state contends that should we affirm the trial court, we would be excluding perfectly good and relevant evidence for violations of merely ministerial or procedural rules. See *State v. Perea,* 85 N.M. 505, 513 P.2d 1287 (Ct.App.1973). We disagree. The rights granted by the statute are not ministerial or procedural. It cannot be said that advice of counsel at an accusatory stage is ministerial or procedural. A review of the Sixth Amendment of the United States Constitution and the myriad cases decided thereunder totally disputes such a contention. The rights granted by the statute are simply an extension of the various rights guaranteed by the Constitution.

■ As we have heretofore indicated, we will not attempt to discuss the rationale behind the statute. We simply state that the state can extend, but not lessen, constitutional guarantees. *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Having decided to extend the constitutional guarantees by statute, the legislative enactment must be upheld.

■ As stated in *Village of Deming v. Hosdreg Company,* supra:

" * * * [T]he public policy of a state is for the legislature whose judgment as to the wisdom, expediency or necessity of any given law is conclusive on the courts unless the declared public policy runs counter to some specific constitutional objection."

It cannot be said that the statute is subject to any specific constitutional objection.

■ The state asks us to impose some sanction other than the exclusionary rule. We fail to see how any other sanction would be permissible in light of the basic constitutional guarantees. When a statute is so closely related to constitutional guarantees, suppression of evidence obtained in violation of the statute is an appropriate remedy. See *Greven v. Superior Court,* 71 Cal.2d 289, 78 Cal.Rptr. 504, 455 P.2d 432 (1969); *United States v. Brod,* 324 F. Supp. 800 (S.D.Tex.1971).

The order of the trial court suppressing the statements is affirmed.

It is so ordered.

LOPEZ, J., concurs.

SUTIN, J., (dissenting).

SUTIN, Judge (dissenting).

I dissent.

Mr. Justice Abe Fortas opened a dissenting opinion with these words.

This case calls not for the judgment of Solomon but for the dexterity of Houdini. *Fortnightly Corp. v. United Artists,* 392 U.S. 390, 402, 88 S.Ct. 2084, 2091, 20 L.Ed.2d 1176 (1968).

It takes the dexterity of a Houdini to affirm the instant case on the basis of a violation of § 41–22A–12(C), N.M.S.A.1953 (2d Repl. Vol. 6, 1973 Supp.) set forth in the majority opinion.

A. *The Public Defender Act is an Indigent Defense Act.*

In 1973, the legislature adopted the Public Defender Act. Laws 1973, ch. 156. The title of the Act is: ·"An act relating to crimes; providing for the *defense* of indigent persons accused of certain crimes; making an appropriation." [Emphasis added].

In criminal law, "The defense of a person charged with crime includes every step in the proceedings from the time of arraignment until his acquittal or conviction, in accordance with the law." *State v. Hudson,* 55 R.I. 141, 179 A. 130, 135, 100 A.L.R. 313 (1935).

In *State v. Murphy,* 87 N.J.L. 515, 530, 94 A. 640, 646 (1915), the court said:

It is to be observed that the Constitution does not provide that the defendant shall have the right to have assistance of counsel from the time of his arrest, but for his defense. Obviously, the word "defense," as here used, means that a defendant is entitled to be represented and defended by counsel when put in jeopardy on his trial, and that his counsel shall have reasonable access to the prisoner for the purpose of preparing his defense. . . . by no stretch of the imagination can the provision be construed to mean that one accused of crime shall have the benefit of counsel to advise him as to whether or not he shall confess. *Confession is a thing entirely apart from defense upon a trial.* [Emphasis added].

The Public Defender Act was enacted to defend an indigent in the accusatory stage.

B. *Defendant was only entitled to advice of rights.*

Prior to taking any oral or written statements from a defendant, the only duty a

police officer owes defendant is to give defendant effective advice of his constitutional rights, i. e., the *Miranda* warnings. *State v. Avila,* 86 N.M. 783, 527 P.2d 1221 (Ct.App.1974). Advice of these rights can be waived. *State v. Carlton,* 83 N.M. 644, 495 P.2d 1091 (Ct.App.1972). The advice of rights and waiver thereof are as set forth in the majority opinion. Before the confession was given, defendant was twice advised of his constitutional rights and defendant waived them. The defendant could ask for no more.

The trial court erroneously suppressed the confession.

C. *The public defender was not authorized to represent the defendant until defendant was found to be indigent by a court and wanted a lawyer.*

Section 41–22A–12(C), supra, provides that the police officer shall notice the public defender when a person is detained. This is the "notification" stage of the arrest proceedings.

Section 41–22A–10(B), N.M.S.A.1953 (2d Repl. Vol. 6, 1973 Supp.), of the "Public Defender Act" provides that "The district public defender shall represent every person without counsel *who is financially unable to obtain counsel * * *.*" [Emphasis added].

Section 41–22–2(C), N.M.S.A.1953 (2d Repl. Vol. 6, 1973 Supp.), of the "Indigent Defense Act" defines a "needy person".

C. "needy person" means a person who, *at the time his need is determined by the court,* is unable, without undue hardship, to provide for all or a part of the expenses of legal representation from available present income and assets; * * * . [Emphasis added].

This determination is deferred until defendant makes his first appearance in court. Section 41–22–5(A), N.M.S.A.1953 (2d Repl. Vol. 6). This is the "defense" stage of the criminal proceedings.

At the hearing held upon defendant's motion to suppress his confession, no evidence was presented that at the time defendant confessed, he was a "needy person * * * who is financially unable to obtain counsel". Defendant was present and was not called upon to testify.

It is obvious that the public defender had no right as an attorney to advise or to represent the defendant prior to the time the court determined he was a "needy person" or at the time the confession was made. *State v. Anaya,* 76 N.M. 572, 417 P.2d 58 (1966); *State ex rel. Peters v. McIntosh,* 80 N.M. 496, 458 P.2d 222 (1969); *State v. Powers,* 75 N.M. 141, 401 P.2d 775 (1965); Annot., Determination of Indigency of Accused Entitling Him to Appointment of Counsel, 51 A.L.R.3d 1108.

The only purpose that I can conceive of the duty of a peace officer to notify the public defender under § 41–22A–12(C), supra, is to allow the public defender to question whether this person is a "needy person". It does not provide that the public defender, upon notification by a peace officer, shall be attorney for the defendant to advise and represent him. See Annot., Construction and Effect of Statutes Providing for Office of Public Defender, 36 A.L.R.3d 1403.

The majority opinion cannot state one reason why the rights granted a detained person by § 41–22A–12(C), supra, are an extension of the various rights guaranteed by the Constitution. It states:

The rights granted by the statute are not ministerial or procedural. It cannot be said that *advice of counsel* at an accusatory stage is ministerial or procedural." [Emphasis added].

"Advice of counsel" forms no part of the Public Defender Act at the "notification" stage. To adopt the rule of the majority opinion would require a peace officer to notify the public defender if a Rockefeller were detained. We must not apply

the Public Defender Act to a millionaire or the President of the United States at the "notification" stage. The public defender's duties begin as an attorney when a court has determined that the person detained is a "needy person".

The public defender successfully overstepped his rights in the district court. He should be denied that zealous attempt to defend a detained person in this Court.

The defendant relies on the following statement of the assistant public defender at the hearing:

I was representing Mr. Rascon while this confession was extracted from him * * *.

This conclusion is groundless. Defendant's brief fails to mention any determination of defendant's indigency by any court before the confession was obtained. Defendant's brief and the majority opinion are silent on the pertinent sections of the Public Defender Act and the Indigent Defense Act.

The dexterity of Houdini cannot legally affirm the order of the trial court.