550 P.2d 266

**STATE of New Mexico, Petitioner,**
**v.**
**Donald RASCON, Respondent.**
**No. 10603.**

Supreme Court of New Mexico.
April 14, 1976.

James L. Brandenburg, Dist. Atty., James F. Blackmer, Asst. Dist. Atty., Albuquerque, for petitioner.

Jerome M. Ginsberg, Santa Fe, for respondent.

OPINION

STEPHENSON, Justice.

Rascon was charged by criminal complaint with assault with intent to commit rape.[1] Arrested on a warrant, he was twice given Miranda[2] warnings, made inculpatory statements and was later indicted. The trial court granted Rascon's motion to suppress the statements because of failure by the police to notify the public defender that the defendant was in custody as provided by § 41–22A–12(C) N.M.S.A. (Supp.1975).[3] The Court of Appeals af-

---

[1]. Section 40A–3–3 N.M.S.A.1953.

[2]. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[3]. "Peace officers shall notify the district public defender of any person not repre- sented by counsel who is being forcibly detained and who is charged with, or under suspicion of, the commission of any crime that carries a possible sentence of imprisonment, unless the person has previously appeared in court upon that charge."

firmed. *State v. Rascon,* 88 N.M. 395, 540 P.2d 875 (Ct.App.1975). We granted certiorari and reverse the Court of Appeals and the district court.

According to Rascon's trial counsel, a public defender, Rascon's name came to the attention of the district public defender's office on June 18, 1974. A great deal of the record can be summarized by saying that the public defender does not have the vaguest notion how this occurred. In any case, on the same day the district defender supposedly assigned counsel to Rascon, and counsel telephoned the jail to inquire about his new client. He was told that Rascon was not in custody, which was true. On June 20, 1974, the district attorney's office filed a criminal complaint against Rascon in magistrate court and a warrant issued. Rascon was apprehended the same day. He was immediately given *Miranda* warnings by reading his rights to him from the "rights card." When booked he was again given his rights by use of the "advice of rights form." In pertinent part, this form was divided into seven separate paragraphs, each of which Rascon initialed, and then signed an acknowledgement that he had been advised of, read and understood his constitutional rights.[4] He then signed a waiver of rights.[5] The police never complied with § 41–22A–12(C).

There is neither evidence nor inference that the advice of rights and waiver of rights forms were not intelligently and voluntarily executed. Rascon thereafter on June 20th made the statements in question. They are not claimed to have been other than voluntary. On July 17th he was indicted and later filed his motion to suppress. The motion set forth several grounds for relief, one of which was a failure on the part of the police to comply with § 41–22A–12(C). The trial court, after finding that Rascon had been advised of his rights, sustained the motion on the grounds that the police had failed to comply with the mentioned statute. The Court of Appeals held that the statute granted an "extension" of "normal" constitutional rights and that suppression of the statements was required.

Inasmuch as the Court of Appeals did not specify the particular constitutional rights which it considered to have been extended by § 41–22A–12(C), we will consider the array. We are concerned with the rights granted by the sixth amendment to the Constitution of the United States "to have the Assistance of Counsel for his defense" and the similar rights mentioned in Article II, § 14 of the New Mexico Constitution (hereafter "sixth amendment rights"). We are also concerned with the right of a defendant not "to be a witness against himself" granted by the fifth amendment to the United States Constitution and the similar right granted by Article II, § 15 of the New Mexico Constitution not to "be compelled to testify against himself in a criminal proceeding" (hereafter "fifth amendment rights").

4. "You have the right to remain silent. Anything you say can be used against you in court.
You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer present with you while we ask you questions.
If you cannot afford a lawyer, one will be appointed at no cost to you before we ask you any questions, if that is your desire. If you decide to answer questions now, without a lawyer present, you will still have the right to stop answering my questions at any time. You also have the right to stop answering my questions at any time until you talk to a lawyer for advice.

I have been advised of and understand my constitutional rights.
I have read and understand my constitutional rights."

5. "I have read this statement of my rights and understand what my constitutional rights are. (I have been advised of and understand my constitutional rights in this matter).
I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

■ The statutory scheme for furnishing lawyers to those financially incapable of employing counsel is embodied in the Indigent Defense Act,[6] §§ 41–22–1 through –10 N.M.S.A.1953, as amended, and the Public Defender Act,[7] §§ 41–22A–1 through –12 N.M.S.A. (Supp.1975). These acts are in pari materia. See *State v. New Mexico State Authority,* 76 N.M. 1, 411 P.2d 984 (1966); *New Mexico Mun. L., Inc. v. New Mexico Envir. Imp. Bd.,* 88 N.M. 201, 539 P.2d 221 (Ct.App.), cert. denied, 88 N.M. 318, 540 P.2d 248 (1975). They are, in the main, responses to sixth amendment rights to counsel for the actual defense of criminal charges. Sixth amendment rights entitle an accused to defense counsel at any "critical stage" of the prosecution. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). However, the right is not recognized by the United States Supreme Court to come into play prior to arraignment [*Powell v. Alabama,* supra], preliminary hearing [*Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970)][8] or lineups after the initiation of formal charges [*United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)]. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).[9]

Consistent with such concepts, the Indigent Defense Act, while recognizing in general terms that a "needy person" has a right to be "counseled and defended" at earlier times, nevertheless requires a judicial determination of whether a person is "needy." This determination shall be "deferred until his first appearance in court." § 41–22–5(A). If the court determines that the person is "needy," the district court shall promptly assign counsel.[10] § 41–22–4(C). It is in this manner that the attorney-client relationship commences for the defense in response to the sixth amendment. Provision is also made for the waiver of counsel in § 41–22–6. That section refers to the waiver of Sixth Amendment Rights.

■ The Public Defender Act creates an agency or arm of the State which undertakes representation of persons "financially unable to obtain counsel." § 41–22A–10(B). The representation commences "not later than the time of the initial appearance of the person before any court" and continues throughout, including appeal. Id. It is implicit in the Act that a judicial determination of indigency is necessary. These procedures relate to the sixth amendment and may be waived. Section 41–22A–12(D) provides:

Any person entitled to representation by the district public defender may intelligently waive his right to representation.

6. Ch. 69, §§ 58–68, [1968] N.M.Laws 355–361, as amended ch. 210, § 1 [1973] N.M. Laws 682.

7. Ch. 156 [1973] N.M.Laws 539–48.

8. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), held the right to counsel at police identifications did not apply to pre-indictment show-ups.

9. A pre-*Miranda* case, *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), suggests that there is an earlier sixth amendment right, but the United States Supreme Court in *Kirby v. Illinois,* supra, stated:

The only seeming deviation from this long line of constitutional decisions was *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977. But *Escobedo* is not apposite here for two distinct reasons. First, the Court in retrospect perceived that the "prime purpose" of *Escobedo* was not to vindicate the constitutional right to counsel as such, but, like *Miranda,* "to guarantee full effectuation of the privilege against self-incrimination . . ." *Johnson v. New Jersey,* 384 U.S. 719, 729, 86 S.Ct. 1772, 1779, 16 L.Ed.2d 882. Secondly, and perhaps even more important for purely practical purposes, the Court has limited the holding of *Escobedo* to its own facts, *Johnson v. New Jersey, supra* at 733–734, 86 S.Ct. [1772] at 1780, and those facts are not remotely akin to the facts of the case before us. 406 U.S. at 689, 92 S.Ct. at 1882.

10. The district court still assigns counsel in those counties where there is no public defender or public defender contract attorney, or where conflicts necessitate appointment of outside counsel.

The waiver may be for all or any part of the proceedings. The waiver must be in writing and countersigned by a district public defender.

This subsection clearly relates to waiver of sixth amendment rights to counsel.

■ We turn to the examination of fifth amendment rights. This is the right against self-incrimination and does not directly involve right to counsel. The touchstone is *Miranda v. Arizona,* supra. It neither created nor expanded upon the constitutional right to counsel. It dealt with the right to be informed of rights against self-incrimination. It does not obligate the State to furnish counsel; rather, it creates a series of choices on the part of the law enforcement officers and the accused. If the officers wish to question the suspect and be able to make use of statements which he may make, they should give him the warnings laid down in *Miranda* or their equivalent. The next move is up to the person detained. If he wishes to assert such rights, he may elect to consult with counsel, to have counsel present during questioning or both. The ball is then back in the officers' court. They may elect to question the suspect no further, in which event the State is under no obligation to provide counsel at that point in response to fifth amendment rights. But if the officers elect to interrogate the person and wish to be able to use his statements, the suspect should be accorded his rights to consult with counsel or to have counsel present, or both, as he chooses. The consequences of continued questioning on the part of the officers without implementation of such an election is, according to *Miranda*:

> If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimi-

nation and his right to retained or appointed counsel (citation omitted).

384 U.S. at 475, 86 S.Ct. at 1628.

Such were Rascon's rights under the fifth and sixth amendments to the Constitution of the United States. No useful purpose would be served by holding that his rights were less under the parallel provisions of the New Mexico Constitution, and we are not disposed to hold that they were greater.

■ Rascon effectively waived his fifth amendment rights. The statutory scheme we have outlined accorded to him his sixth amendment rights in full measure. He was provided with an attorney at arraignment, has had one ever since and has one now. None of his federal or state constitutional rights in respect to counsel were violated.

■ If some right of Rascon regarding counsel was violated, it must of necessity have been a right arising under the provisions of the Indigent Defense Act or the Public Defender Act. Because of the factual foundation upon which Rascon's argument is constructed, involving interrogation rather than defense of a formal charge, and the relief he seeks which is suppression of a presumably incriminating statement, we are concerned with a supposed statutory extension of fifth amendment rights or some statutory right closely akin to them. We are convinced that the Indigent Defense Act, couched throughout in terms of representation, deals exclusively with sixth amendment rights for the defense of criminal charges—rights which we have said were accorded to Rascon and which he does not assert were denied to him. We turn our attention to the Public Defender Act.

Rascon's argument centers on § 41–22A–12(C) coupled with § 41–22A–10(E).[11] It is urged that these two statutes together create a right to consult with counsel, or perhaps even an attorney-client rela-

---

11. "The district public defender may confer with any person who is not represented by counsel and who is being forcibly detained."

tionship, from the instant of forcible detention. We do not so view them.

This court and our legislature have created an elaborate and carefully structured arrangement for the protection of rights of persons detained in respect to assistance of counsel from the time of commencement of detention. But the arrangements so created do not in terms provide for such early consultation as is contended by Rascon. The Public Defender Act is not self-executing insofar as rendition of services by the defender is concerned. The ultimate decision as to whether such services will be rendered is left to the district courts within guidelines established by statute, court rule or judicial decision. Conversely, it is clear the decision is not left either to the person detained or to the public defender.

The Public Defender Act not only spells out the powers and duties of the defender, but restricts them as well. He is not generally authorized or empowered to consult with or represent persons detained, nor to volunteer his services or advice, except in accordance with the Act. In fact, should he do so, he might confront the normal dangers of counseling persons with whom no attorney-client relationship exists and who have evinced no desire to confer in response to the *Miranda* warnings. See Rule 2–103, Code of Professional Responsibility.[12] One notable freedom is the right to be free of unsought lawyers.[13]

Moreover, we see no need for any such right of early consultation or representation, nor any purpose to be served thereby. Our Rule of Criminal Procedure 16 [14] provides, inter alia, that the arresting officer shall make a return to the court which issued the warrant and that "[u]pon arrest the defendant shall be brought before the court without unnecessary delay." Rule 16 applied both to magistrate and district courts,[15] was doubtless patterned on Rule 5(a) of the Federal Rules of Criminal Procedure,[16] and antedated the Public Defender Act. At the expeditious initial appearance required by Rule 16, Rule 19 [17] of those rules requires certain explanations of rights to be given to the defendant, including rights to counsel for assistance and defense at every stage "of the proceedings," obviously sixth amendment rights.

In order to implement those rights, § 41–22A–12(A) provides that at any court appearance, obviously including the initial one, the person detained be advised of his rights to confer with the defender and "if he is financially unable to obtain counsel," to be represented by the defender. Inasmuch as the benefits of the Public Defender Act accrue only to those who are "financially unable to obtain counsel" and who are charged with certain crimes [§ 41–22A–10(B)], obviously a determination of indigency is required. Inquiry into this feature is accomplished by the court, and the public defender is assigned to the case

12. Section 18–5–2 (Rule 2–103) N.M.S.A. (Supp.1975).

13. See *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

14. Section 41–23–16 N.M.S.A. (Supp.1975).

15. N.M.R.Crim.P. 16 applied to magistrate courts by virtue of N.M.R.Crim.P. 1 before adoption of the Rules of Criminal Procedure for Magistrate Courts, effective October 1, 1974. Now a comparable provision is found in N.M.R.Crim.P. for Magistrate Courts 4 (d), 12 [§ 36–23–4(d), –12 N.M.S.A. (Supp. 1975)].

16. "An officer making an arrest under a warrant issued upon a complaint on any person making an arrest without a warrant

shall take the arrested person without unnecessary delay before the nearest available federal magistrate . . . ."

17. "Upon the first appearance of a defendant before a court in response to summons or warrant or following arrest, the court shall inform the defendant of the following: (1) the offense charged; (2) the penalty provided by law for the offense charged; (3) the right to bail; (4) the right, if any, to trial by jury; (5) the right, if any, to the assistance of counsel at every stage of the proceedings; (6) the right, if any, to representation by an attorney at state expense; (7) the right to remain silent, and that any statement made by the defendant may be used against the defendant; and (8) the right, if any, to a preliminary examination."

where indigency appears. Although § 41–22A–12(B) [18] is somewhat inartfully worded, such is its clear import, particularly when considered in conjunction with § 41–22A–12(A). There is thus no occasion for earlier consultations between the person detained and the defender upon the subject of indigency, since the initial hearing presumably occurs without unnecessary delay, and the defender would of necessity know if indigency is determined to exist. Naturally, if the initial appearance is in magistrate court and indigency is found to exist, the matter must be brought to the attention of a district judge for assignment of the defender, whether by § 41–22–4 or otherwise. This is an administrative detail with which we are not presently concerned.

The method of assignment of the defender without unnecessary delay which we have reviewed thus accounts for the specific provision of § 41–22A–10(B) that "[t]he representation shall begin not later than the time of the initial appearance of the person before any court . . .." The phrase "not later than" recognizes that under certain circumstances, earlier contacts between the defender and the person detained may be permitted by the court, as we shall presently see.

What then is the purpose and meaning of § 41–22A–12(C)? We are of the opinion that § 41–22A–12(C) was intended to advise the public defender of the names and whereabouts of persons who are being forcibly detained so that if they are not brought before a court for an initial appearance without unnecessary delay, the public defender may make inquiries, with demands upon the State to bring forth the prisoner if appropriate and with application to a court if necessary. During such inquiries the defender might think it needful to consult with the person detained. In that event the defender must request the court's authorization to conduct an interview. Section 41–22A–10(E) would sanction such a procedure.

Section 41–22A–12(C) may well have other purposes of an administrative nature. Compliance with it would serve to alert the public defender that he might be .called upon to confer with a detained person who has elected to consult with an attorney or have one present during questioning in response to *Miranda* warnings. And by § 41–22A–7 the public defender is required to conduct research and studies that will improve the operation of the department and the administration of the Act; to maintain records and statistical data which reflect the operation and administration of the department; and to submit an annual report covering such matters. Moreover, under § 41–22A–9 in connection with the establishment and revision of public defender districts, he is required to take into account, inter alia, case load statistics.

We hold that § 41–22A–12(C) does not expand upon or extend the constitutional rights of a person forcibly detained, under the Constitutions of the United States or New Mexico. Rather, its prime purpose is to protect and implement the right of persons detained to be brought before a court without unnecessary delay.

We will not recognize or create by tortured construction of the Public Defender Act some early right of consultation or representation which is not provided by the Act, either in its terms or by implication, which lies outside the scope of Rascon's fifth or sixth amendment rights and which serves no useful purpose. We will not close our eyes to reality. We do not doubt that were we to countenance such early and unsought consultations, zealous defenders would on occasion counsel the person detained to remain silent, thus chilling the ability of the State to obtain statements or confessions. We do not believe the legislature had any such intention, and any

---

18. "Following notification of any person under subsection A of this section, the judge shall notify the district public defender and continue the proceedings until the person has conferred with the district public defender."

reasonable judicial policy would mitigate against it.

■ And what of § 41–22A–10(E)? Is it a blanket authorization to confer with all indigent persons who are forcibly detained? It is not. In our opinion, § 41–22A–10(E) authorizes the public defender to confer with a person detained (1) when that person has evinced a desire to consult with an attorney or have one present during questioning in response to Miranda warnings and law enforcement personnel have asked the *defender* to do so; (2) when the defender is conducting inquiries into whether the initial appearance has been unnecessarily delayed or attempting to have the person detained brought before the court for such an appearance, and the district court has authorized him to do so; (3) when authorized or directed in other circumstances by a district judge or (4) when defending a criminal charge following the initial appearance.

■ We consider now the effect of the peace officers' failure to comply with § 41–22A–12(C). Rascon contends that suppression was required. We do not reach that question today. Rascon's sixth amendment rights were not involved and his fifth amendment rights were not violated, entirely apart from the consideration that they were waived. In addition, there is a total absence of any showing of prejudice.

We would not ordinarily require suppression of a statement or confession, unless the failure to comply resulted in the person detained being deprived of his right to an initial appearance without unnecessary delay. Moreover, such delay must have resulted in a violation of a constitutional right. A demonstration of actual prejudice would also be required.

Suppression of evidence, which is to say suppression of facts and truth, on grounds which have nothing to do with the defendant's guilt or innocence, seems to have become fashionable. We apply federal constitutional law as announced by the United States Supreme Court in this regard without demurrer or voicing our reservations as to its wisdom or whether it achieves the objectives sought. However, we have no intention of expanding upon the suppression of evidence one whit further than is required of us.

Similarly, we do not reach the issue of whether one who is represented by an attorney and is in custody can be questioned before indictment by law enforcement officers after *Miranda* warnings. We observe that the law appears to favor such interrogations. See *United States v. Masullo*, 489 F.2d 217 (2nd Cir.1973).

The pendulum has swung so far and paused so long in the direction of supposed protection of the rights of criminal defendants that a distrust of confessions seems to have been generated—a visceral feeling that confessions are unfair; should be viewed with suspicion; and are somehow reprehensible because the person charged was not bound to speak. This is absurd. Confessions and inculpatory statements are useful and desirable in the detection and prosecution of crime. The search for truth and the achievement of justice are eased and facilitated, and efficiencies in law enforcement and the judicial process are encouraged. We are not disposed to distort the statutes we have cited beyond their terms so as to hamper the obtaining of statements and confessions within the parameters of constitutional safeguards.

The Court of Appeals is reversed. The order of the trial court is reversed. We remand to the trial court to continue with proceedings against the defendant.

OMAN, C. J., and McMANUS, MONTOYA and SOSA, JJ., concur.