724 P.2d 756

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**John Edward SEWARD,
Defendant-Appellant.**

**No. 8644.**

Court of Appeals of New Mexico.

June 26, 1986.

Paul G. Bardacke, Atty. Gen., Barbara F. Green, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Hollis A. Whitson, Albuquerque, for defendant-appellant.

## OPINION

ALARID, Judge.

A motion for rehearing was filed in this case, and the court having considered such motion, grants the state an extension of time to file its motion to June 24, 1986, and further grants said motion. The original opinion filed in this case is withdrawn and the following opinion is substituted therefor.

Convicted of three counts of residential burglary, two counts of larceny over $100, larceny over $2500, criminal damage to property, unlawful taking of a vehicle, and conspiracy to commit receiving or transferring of a stolen vehicle, defendant John Seward raises the following issues on appeal:

I. Whether there is sufficient evidence to support defendant's conviction of larceny over $2500;

II. Whether defendant's statement of August 7, 1985 should have been suppressed because of the Public Defender Act;

III. Whether defendant's statement of August 7, 1985 was admitted in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966);

IV. Whether defendant was charged with non-burglary crimes in violation of an agreement with police officers; and

V. Whether the trial court erred in failing to award presentence good time to defendant.

We reverse on issue I, and affirm the trial court on the other issues raised.

## I. WHETHER THERE IS SUFFICIENT EVIDENCE TO SUPPORT DEFENDANT'S CONVICTION OF LARCENY OVER $2500.

■ Defendant was charged, by grand jury indictment, of violating NMSA 1978, Section 30–16–1 (Repl.Pamp.1984), by taking a camera, camera lens and jewelry belonging to Helen Brundidge. Defendant argues that there was insufficient evidence that the value of the stolen property was over $2500. We agree.

Mrs. Brundidge testified that many items were taken from her house. However, she only identified four items: a camera, a diamond ring, a camera case and a tin box. She testified that the ring had been appraised as having a value of $2000. No value was ever supplied for the camera. When asked to value the tin box, the victim was unable to do so, and viewed in the light most favorable to the state, Mrs. Brundidge may also have testified that the value of the camera case was $75. Thus, the testimony established, at most, that the items taken had a value of $2075.

The state argues that there was sufficient evidence based upon the following exchange between the prosecutor and Mrs. Brundidge:

Q. Let me make you understand the question. Did you give the police officers an estimate of the damage? Am I phrasing it correctly? When you reported this to the police did you give them an estimate of the damage?

A. I wasn't * * * I don't remember being asked if there was an estimate— for an estimate. What I was asked for was the number of items or the items that were missing.

Q. Okay. At any time did you volunteer an estimate of the value of what was damaged?

A. Yes, the values on that piece of paper [this piece of paper was not introduced into evidence].

Q. And what is the value you gave to the police?

A. Oh, altogether I suppose it would be around four thousand because they broke the window and the screen coming in. I had to have my curtains cleaned and * * *.

The prosecutor interrupted the witness at this point. Other than what has already been referred to, there was no other testimony concerning value. The state argues that the $4000 figure was sufficient evidence. In response to the prosecutor's question, the victim was giving an estimate of "the value of what was damaged." The only items that we know were included in this figure were the cost of repairing the window and the cost of having the curtains cleaned. Even if it is reasonable to infer that the $4000 figure included the value of the items taken, we do not believe that it is reasonable to infer that the relevant portion of the $4000 figure, which consisted of the value of the items taken, was over $2500. One would have to guess that the value of the items taken, in addition to the ring and the camera case, was sufficient to make up the difference between $2500 and $2075. The victim herself did not put a value on the tin box, and we cannot assume that the camera was worth more than $325. Substantial evidence does not consist of inferences based upon conjecture. *State v. Hermosillo*, 88 N.M. 424, 540 P.2d 1313 (Ct.App.1975). Because there is insufficient evidence to sustain defendant's conviction of larceny over $2500, we must reverse his conviction on this count.

## II. WHETHER DEFENDANT'S STATEMENT OF AUGUST 7, 1985 SHOULD HAVE BEEN SUPPRESSED BECAUSE OF THE PUBLIC DEFENDER ACT;

and

## III. WHETHER DEFENDANT'S STATEMENT OF AUGUST 7, 1985 WAS ADMITTED IN VIOLATION OF *MIRANDA v. ARIZONA,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

For the sake of clarity, we will discuss the above issues together in this section, in addition to the facts necessary to our resolution of both issues.

**FACTS:**

What follows is the testimony presented at the suppression hearing:

The first witness called at the suppression hearing was Officer Huntsman. Huntsman investigated a burglary reported by Charles Seward, defendant's uncle. Defendant was arrested for this burglary. Huntsman took defendant to the Albuquerque Police Department's word processing unit. Huntsman advised defendant of his rights and asked defendant if he understood his rights. Defendant indicated that he understood his rights, signed an advice of rights form, initialed the portions of the form informing him of his rights, and gave a statement (first statement). In this statement, which was made on August 2, defendant again waived his rights. Defendant acted cooperatively and was not compelled to give his statement by coercion, threats or promises. The officer did not recall defendant saying that he was giving the statement only to get his friends off, defendant asking for a lawyer, or defendant making a phone call. The officer testified that he did not use tricks or psychological pressure to get defendant to give a statement.

The next witness was Detective Romero. Romero was checking pawn tickets against reports of stolen property when he discovered that defendant had signed a pawn ticket for stolen property (Brundidge's camera). After he began to investigate the case, he discovered that defendant was in custody for the Seward burglary. He assumed that defendant had been arraigned on that case. On August 7, Romero went to speak to defendant at the Bernalillo County Detention Center. Defendant said nothing about being represented by a lawyer. Romero advised defendant of his rights and questioned him about the Brundidge burglary and another one (the Townes burglary). He told defendant that the police had fingerprints linking him to the burglaries. Defendant then admitted that he committed those burglaries (second statement).

Romero then told defendant that the police were interested in closing their files on other burglaries and that he would not be charged with any other burglaries about which he could provide information. This deal was discussed only after defendant admitted to the Brundidge and Townes burglaries. Defendant agreed, but insisted that the agreement be put in writing. Romero had an assistant district attorney draw up a letter containing the agreement and showed it to defendant. Defendant read the letter and asked what the term "forego" meant, as well as some other questions about the agreement. He then agreed to the deal.

Defendant accompanied officers to the scenes of other burglaries he had committed and showed the officers where some of the property from the Brundidge burglary was hidden. He was never charged with offenses arising out of these other burglaries.

The assistant district attorney who drafted the letter also testified. He was told by Romero that defendant was not represented by a lawyer. He knew that defendant had been arrested and was probably in jail. He knew the usual practice was for someone arrested on felony charges to be arraigned within forty-eight hours. He made no attempt to contact the public defender's office, and felt no obligation to do so. He had no personal contact with defendant.

Defendant was the final witness called at the suppression hearing. His testimony was as follows: Defendant is nineteen years old and had been arrested before the incidents in this case. Before being kicked out of school, defendant had taken regular classes, except for math. When he was

arrested for the Seward burglary, he wanted to call the public defender's office, but was told by the police officers that he could not use the phone unless he gave a statement. The only reason he gave a statement was to exonerate his friends who were also suspected by the police. He was arraigned on the Seward burglary before talking to Romero. A public defender represented him at the arraignment, and he was told that another public defender would be assigned to him. When Romero arrived at the detention center, defendant said that he wanted a lawyer and did not want to talk about the Townes or Brundidge burglaries. He admitted, however, reading and signing the advise of rights form. He believed that he did not have an attorney at that time. He attempted to call the public defender office every day, but no attorney had been assigned to the case at that time. The detective never stated that he would be charged with the Townes or Brundidge burglaries. His understanding of the agreement was that he would not be charged with the Townes or Brundidge burglaries. He did not admit to the Townes or Brundidge burglaries until the deal was entered into.

Several exhibits were introduced at the suppression hearing: the statement given to Huntsman, the advise of rights forms, the letter agreement, and a "court appearance and presentment worksheet" showing that defendant had been represented by a public defender when he was arraigned on the Seward burglary.

Defendant made two arguments, at trial, concerning suppression of his statements: (1) that the first statement was involuntary, and (2) that the second statement should have been suppressed because the public defender was not notified prior to questioning. The trial court ruled that both statements were voluntary and that the second statement was not induced by any misrepresentation as to what charges would be filed. The court did, however, suppress all statements made by defendant after the agreement was entered into because of concern over the difficulty of separating statements relating to the case

from evidence of the other uncharged burglaries.

## DISCUSSION:

Defendant argues, on appeal, that his admissions concerning the Townes and Brundidge burglaries should have been suppressed. First, defendant argues that the second statement was obtained in violation of the Public Defender Act, NMSA 1978, Sections 31–15–1 to –12 (Repl.Pamp. 1984), and the Indigent Defense Act, NMSA 1978, Sections 31–16–1 to –10 (Repl. Pamp.1984). Defendant makes two specific contentions: (1) that law enforcement authorities should have notified the public defender's office that defendant was not represented by counsel, and (2) that the public defender's signature was required on a waiver of representation form. *See* Section 31–15–12(C) and (D). Defendant claims that suppression is the remedy for these alleged violations. Second, defendant argues that the statement was obtained in violation of his fifth amendment rights.

Defendant's arguments require consideration of *State v. Rascon*, 89 N.M. 254, 550 P.2d 266 (1976). Rascon was charged, by criminal complaint, with assault with intent to commit rape. He was arrested and given *Miranda* warnings. Rascon signed advise of rights and waiver of rights forms, made inculpatory statements, and was later indicted. There was no evidence that the forms were not intelligently and voluntarily executed. The trial court suppressed the statements because the police did not notify the public defender that Rascon was in custody, as required by Section 31–15–12(C). The court of appeals affirmed the trial court and the supreme court reversed, holding that the failure of the police to notify the public defender of Rascon's custody did not require suppression of the statements.

The supreme court began its analysis by noting that two constitutional protections were involved: the sixth amendment right to counsel and the fifth amendment privilege against self-incrimination. The two acts were primarily "responses to sixth

amendment rights to counsel for the actual defense of criminal charges." *Id.* at 257, 550 P.2d at 269. The court held that neither act afforded greater rights to counsel than afforded by the sixth amendment. Neither came into play until a critical stage of the prosecution was reached. No right to counsel was triggered by the Indigent Defense Act until the defendant's first court appearance. The Public Defender Act did not confer blanket authorization for the public defender to confer with all detained indigents. Instead, the public defender was authorized to confer with a detained person:

> (1) when that person has evinced a desire to consult with an attorney or have one present during questioning in response to Miranda warnings and law enforcement personnel have asked the *defender* to do so; (2) when the defender is conducting inquiries into whether the initial appearance has been unnecessarily delayed or attempting to have the person detained brought before the court for such an appearance, and the district court has authorized him to do so; (3) when authorized or directed in other circumstances by a district judge or (4) when defending a criminal charge following the initial appearance.

*Id.* at 261, 550 P.2d at 273 (emphasis in original). The court also held that the provision of the Act requiring the public defender to sign a waiver of representation "clearly relates to the waiver of sixth amendment rights to counsel." *Id.* at 258, 550 P.2d at 270.

Rascon's sixth amendment rights were not violated because he was represented by counsel from his first appearance. Rascon waived his fifth amendment rights. The question remained, however, whether the statement should have been suppressed because of the failure of the police to notify the public defender that Rascon was in custody. The court held that the suppression was inappropriate, stressing that Rascon had demonstrated no prejudice. The court stated that evidence would be suppressed when required by federal constitutional law, but cautioned that "we have no

intention of expanding upon the suppression of evidence one whit further than is required of us." *Id.* at 261, 550 P.2d at 273.

■ Defendant attempts to distinguish *Rascon* on the basis that he was in custody, had been arraigned in the Charles Seward burglary, and was represented by the public defender in the Seward case. In *Rascon*, the court stated, "we do not reach the issue of whether one who is represented by an attorney and is in custody can be questioned before indictment by law enforcement officials after *Miranda* warnings." *Id.* However, the court noted that "the law appears to favor such interrogations." *Id.* The issue is whether the second statement should be suppressed because of the failure to notify the public defender that defendant was in custody pursuant to Section 31–15–12(C). Defendant was in custody because of the Seward case. The public defender knew this. Even assuming that Section 31–15–12(C) was violated, *Rascon* held that suppression is inappropriate.

We do not believe defendant's sixth amendment rights were violated. Defendant argues only that his fifth amendment rights were violated. However, *Rascon* held that the two acts do not go beyond the sixth amendment rights to counsel. Therefore, a sixth amendment analysis is appropriate. No charges had been filed in the Townes and Brundidge cases. Romero did not question defendant about the Seward case.

In effect, defendant asks us to hold that where an accused has been charged with one offense and is represented by counsel with respect to that offense, police must notify that counsel before questioning defendant about another unrelated offense. *Cf. State v. Ture*, 353 N.W.2d 502 (Minn. 1984) (defendant made a similar contention with respect to a second offense committed in a different jurisdiction). This court rejected a comparable contention in *State v. Hogervorst*, 90 N.M. 580, 566 P.2d 828 (Ct. App.1977). Courts of other jurisdictions

have considered similar contentions. *See State v. Ture.* Although New York has adopted, in effect, the rule urged by defendant, *see People v. Bartolomeo,* 53 N.Y.2d 225, 440 N.Y.S.2d 894, 423 N.E.2d 371 (1981); *People v. Rogers,* 48 N.Y.2d 167, 422 N.Y.S.2d 18, 397 N.E.2d 709 (1979), the majority of the courts that have considered the question have held that the sixth amendment right to counsel does not attach in these circumstances. *State v. Ture.* As the U.S. Supreme Court has said:

> [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities.

*Maine v. Moulton,* —— U.S. ——, ——, 106 S.Ct. 477, 489, 88 L.Ed.2d 481, 498 (1985).

Defendant makes extensive argument, in the brief, as to why the prosecutor should not have relied on defendant's statement that he was not represented by counsel, but should have made independent inquiry to the public defender's office. This issue is irrelevant. Defendant was not represented in the Townes or Brundidge burglaries. No sixth amendment rights had attached because adversary proceedings had not begun. Representation under the Indigent Defense Act had not arisen because defendant had not had a court appearance in the Townes or Brundidge cases. The Public Defender Act did not apply because none of the events listed in *Rascon* had occurred. Since defendant was not represented in the Townes or Brundidge cases, there was no ethical violation. *United States v. Thomas,* 474 F.2d 110 (10th Cir.), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973). *Thomas* was decided on the basis of the ethical violation of the prosecutor, not on constitutional grounds. This rationale, however, does not apply if the questioning is concerning a matter on which the defendant is not represented, even if the defendant is represented on another matter. *United States v. Masullo,*

489 F.2d 217 (2nd Cir.1973) (questioning violated neither sixth amendment nor professional ethics).

The Public Defender Act and the Indigent Defense Act should be viewed only as establishing mechanisms to provide counsel for the defense of indigents in many criminal proceedings. It is not within the legislature's purview to establish or regulate constitutional or judicial procedural rights through these Acts, *see Ammerman v. Hubbard Broadcasting, Inc.,* 89 N.M. 307, 551 P.2d 1354 (1976), and we do not view those Acts as a legislative attempt to do so.

Defendant's argument that the second statement was in violation of *Miranda* is also without merit. Defendant testified that he told Romero he wanted a lawyer and did not want to talk about the Townes or Brundidge burglaries. Romero testified, however, that defendant was fully advised of his rights, was cooperative, and made no request to see a lawyer. Defendant admitted signing and understanding the advise of rights form. Defendant's later insistence on a written agreement, and his scrutiny of that agreement, indicate that his will was not overcome. The trial court's ruling on voluntariness will not be overturned if supported by substantial evidence. *State v. Boeglin,* 100 N.M. 127, 666 P.2d 1274 (Ct.App.1984), *rev'd on other grounds,* 100 N.M. 470, 672 P.2d 643 (1983). Conflicts in the evidence and issues of weight and credibility are resolved by the trial court. *State v. Pruett,* 100 N.M. 686, 675 P.2d 418 (1984). The evidence is viewed in the light most favorable to the trial court's ruling and inferences contrary to the court's ruling are ignored. *State v. Boeglin.* As noted above, the trial court ruled that the statement was voluntary and was not the result of any improper influence or misrepresentation as to what charges would be filed. There was substantial evidence to support this ruling.

Defendant contends that his statement was not voluntary because he did not understand that he was represented by counsel in the Seward case. Thus, defendant

argues, his waiver of his right to consult with counsel was not knowing and intelligent. Defendant did understand that he was represented by a public defender in the Seward case and that another attorney in the public defender's office would be assigned to him in that case. Defendant called the public defender's office every day to see if an attorney had been assigned to his case yet. Even assuming that defendant did not understand that he was represented by counsel in the Seward case, this fact did not render his statement involuntary. What is important, for *Miranda* purposes, is that defendant understood that he had a right to an attorney. There is no contention that defendant did not understand the advise of rights form.

## IV. WHETHER DEFENDANT WAS CHARGED WITH NON–BURGLARY CRIMES IN VIOLATION OF AN AGREEMENT WITH POLICE OFFICERS.

█ Defendant argues that the agreement between him and the authorities required that all non-burglary charges be dismissed, or, alternatively, that all charges relating to the Townes and Seward cases be dismissed. The court ruled that the agreement between defendant and the authorities was contained in the letter agreement, and that the letter agreement clearly did not require dismissal of any charges arising out of the Seward, Townes or Brundidge burglaries.

Defendant argues that the trial court erred in not determining if there was an oral agreement in addition to the letter agreement. Due process may require the enforcement of a verbal agreement between defendant and law enforcement personnel. *State v. Session*, 91 N.M. 381, 574 P.2d 600 (Ct.App.1978). We disagree, however, with defendant's argument that the court did not determine the existence of an oral agreement. The court found that the second statement was not induced by misrepresentations as to what charges would be filed. The trial court also found that the agreement between defendant and the

police was contained in the letter. There was substantial evidence to support the court's determination that the agreement was contained in the letter. *See State v. Doe*, 103 N.M. 178, 704 P.2d 432 (Ct.App. 1984). Romero testified that defendant admitted to the Seward and Townes burglaries before any deal was discussed. Romero also testified that defendant was only told that he would not be charged with "other" burglaries. Defendant testified that he wanted the deal in writing because he did not trust police officers. Defendant scrutinized the agreement. The agreement provided as follows:

Unless a promise or agreement is contained in writing in this letter, there is no promise or agreement.

Albuquerque Police Officers have investigated and charged you with the commission of the following Residential Burglaries, Larcenies over $100 (and, if applicable, conspiracy with another to commit such burglaries and/or larcenies):

(1.) APD CASE 84–49831, residential burglary occurring 2834 Pennsylvania NE, Albuquerque, on or about 30 July 1984, and a larceny over $100.

(2.) APD CASE 84–49191, residential burglary and larceny over $100 occurring at 3804 Candelaria, N.E., Albuquerque, on or about 25–27 July 1984.

(3.) APD CASE 84–48051, residential burglary and larceny over $100 occurring at 3800 Hilton, N.E., Albuquerque, NM, on or about 23 July 1984.

The above cases will be forwarded to the District Attorney's office for review and possible prosecution. There are no promises that any of the above cases will not be prosecuted, or that reduced charges or pleas will occur or be allowed.

We are most interested in detecting and solving burglaries * * * committed by you, other than the above 3 incidents being forwarded to the D.A. office.

Defendant complains that the agreement did not refer to case names, but only to addresses and case numbers. The agreement, however, clearly refers to three dif-

ferent cases and three different addresses. Defendant could not have reasonably thought that the agreement referred only to the Seward case.

Even assuming that defendant's interpretation of the agreement was genuine and reasonable, dismissal of any charges would not be necessary. The trial court determined that the second statement was not the result of any misinterpretation as to what charges would be filed. This is supported by Romero's testimony that defendant gave the second statement before the agreement was discussed. Even if the trial court determines that a non-written agreement was made, the court must still determine whether a refusal to comply with the agreement would deny defendant due process of the law, and what relief, if any, is appropriate under the circumstances. *State v. Doe.* There would not be a denial of due process if the agreement, as understood by defendant, was not enforced. The agreement came after defendant implicated himself in the Townes and Brundidge burglaries, and, therefore, defendant's only reliance was on the state's agreement not to prosecute him for the other burglaries. Defendant suffered no prejudice from this as the state filed no charges relating to these other burglaries. Therefore, due process does not require the dismissal of any of the charges relating to the Seward, Townes or Brundidge burglaries. *See State v. Session* (in order for defendant to be entitled to specific performance, there must have been some detriment). However, for the reasons discussed above, we hold that the trial court correctly determined that there was no agreement outside of the letter agreement. Thus, it is unnecessary to address the due process aspects of this issue.

## V. WHETHER THE TRIAL COURT ERRED IN FAILING TO AWARD PRESENTENCE GOOD TIME TO DEFENDANT.

■ Defendant was unable to make bond and was incarcerated at the Bernalillo County Detention Center from the time of his arrest until the entry of judgment and sentence in May 1985. Defendant was tried in November 1984. A judgment and commitment for diagnostic evaluation was entered on February 1, 1985. On April 10, 1985, defendant filed a motion to reduce sentence. The motion states that the court had imposed a nine-year sentence on April 8, 1985. However, no written sentence was entered in the record until May 6, 1985. On April 23, defendant filed a motion for good time credit, asking the district court to credit defendant's sentence with good time which defendant claims he earned during his presentence confinement. A hearing on the two motions was held on May 6. At the end of the hearing, the judge orally denied both motions. Judgment and sentence was entered on the same day.

Defense counsel asked the court to award defendant ninety days of good time credit. Defense counsel argued that defendant's right of equal protection (under both the federal and state constitutions) was violated to the extent the applicable New Mexico statutes did not provide for the award of good time credit for presentence confinement. The prosecutor responded by arguing that the existence of rehabilitative facilities in the penitentiary justified disparate treatment. The court denied defendant's motion, stating that only the warden could award good time and that there was no statutory authority for the award of good time for presentence confinement. A form order denying defendant's motion was entered on May 7.

The supreme court has recently considered the issues raised in this appeal in the case of *State v. Aqui,* 721 P.2d 771 (N.M.1986). The holding in *Aqui* is dispositive of the issues raised in this case and, in accordance with the supreme court's opinion therein, we must affirm the district court on this issue.

Therefore, the district court is reversed on issue I and the case is remanded for dismissal of the charge of larceny over $2500. The district court is affirmed on all other issues raised.

IT IS SO ORDERED.

MINZNER and FRUMAN, JJ., concur.