The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: April 28, 2023

**No. A-1-CA-40149**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**MICHAEL DIRICKSON a/k/a**
**MICHAEL S. DIRICKSON,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Erica Schiff, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**YOHALEM, Judge.**

{1}     Defendant Michael S. Dirickson appeals his conviction of one count of possession of a controlled substance (methamphetamine), contrary to NMSA 1978, Section 30-31-23(A) (2019, amended 2021). Defendant argues on appeal: (1) the district court erred in refusing to suppress his un-Mirandized[1] response to a police officer's question about the contents of his motel room; (2) the district court abused its discretion when it refused to grant a mistrial based on a witness's comment on Defendant's post-*Miranda* silence; (3) the district court's instruction to disregard hearsay testimony was insufficient to cure the prejudice from testimony about a motel clerk's out-of-court statement; (4) prosecutorial misconduct in closing argument amounted to fundamental error, requiring reversal; and (5) cumulative error requires reversal. We affirm.

## BACKGROUND

{2}     The issues on appeal arise from the circumstances surrounding Defendant's arrest outside a motel in Alamogordo, New Mexico involving Defendant's questioning by police incident to his arrest, and the sweep of his motel room that

---

[1]*See Miranda v. Arizona*, 384 U.S. 436 (1966) (holding that a defendant's statements made in response to custodial interrogation are admissible in evidence only if the defendant has been warned prior to questioning that they have a right to remain silent, they have a right to counsel, and that any statement made can be used against them at trial).

followed his arrest and questioning. We describe the circumstances briefly, in the light most favorable to the district court's rulings, leaving additional facts for our discussion of each issue.

{3} Sheriff's Deputy Juan Rodriguez, a drug enforcement agent, received a call from an unknown person reporting that Defendant, a person with an outstanding warrant for his arrest, was at Motel 6, Room 201 (an upstairs room) in Alamogordo. After verifying that Defendant had an active arrest warrant, Deputy Rodriguez and his partner, Deputy Brad Nordquist, headed to the motel. The record does not reveal the grounds for the arrest warrant.

{4} The deputies positioned themselves across the street from Room 201 where they were able to see into the room through an opening in the curtains. Although they were able to identify Defendant, and although they did not see anyone except Defendant enter or leave the room, they testified at trial that they were not able to determine whether Defendant was alone in the room. Both officers testified that they could see only a silhouette after the curtains were closed and could not determine if there were one or two people in the room.

{5} After more than an hour of observation, Deputy Nordquist left the officers' vehicle and headed toward Defendant's motel room. Deputy Nordquist was standing at the top of the stairs, near the door to Room 201, when Defendant, who had left the room, approached the bottom of the staircase. Deputy Nordquist pointed his gun at

2

Defendant and ordered Defendant to the ground. Defendant complied. Deputy Nordquist continued to cover Defendant with his gun while Deputy Rodriguez drove to where Defendant was lying on the ground. When Deputy Rodriguez arrived, he handcuffed Defendant, patted him down, and emptied Defendant's pockets. No weapons or contraband were found in that search. Deputy Rodriguez then helped Defendant stand up, and walked him to the front of the motel where the Deputy's vehicle was parked.

{6}     Without reading Defendant *Miranda* warnings, Deputy Rodriguez asked Defendant, "Hey, is there anything in that room up there, because my partner has to go up in there, and I don't want him to get hurt." Defendant responded, "Just my tablet. I'm charging it." Deputy Rodriguez then asked, "Is that all?" Defendant responded, "And I got a loaded syringe [up] there."

{7}     After relaying this information to Deputy Nordquist, who, with another officer, was about to conduct a sweep of Defendant's motel room, Deputy Rodriguez read Defendant *Miranda* warnings. He again asked Defendant if there was anything in Room 201. Defendant responded that his electronics and jacket were in the room. Deputy Rodriguez asked Defendant about the syringe. Defendant replied, "What syringe?"

{8}     The sweep of Defendant's motel room revealed a single loaded syringe in plain view on top of the refrigerator in the room, a jacket, and a tablet, which was

3

charging. The room was otherwise empty. The bed was made and the room appeared ready for a new guest. A laboratory test of the contents of the syringe identified methamphetamine.

**DISCUSSION**

**I.      The Admission of Defendant's Un-Mirandized Statement Was Error, but This Error Was Not Fundamental**

{9}      Defendant argues on appeal that the district court erred in refusing to suppress his response to Deputy Rodriguez's question about the contents of his motel room. Defendant contends that suppression was required because Deputy Rodriguez's question was a custodial interrogation and he had not been advised of his right to remain silent, as required by *Miranda*. The State contends in response that Deputy Rodriguez's question was designed to protect the safety of the law enforcement officers who were about to conduct a sweep of Defendant's motel room, and was, therefore, subject to the "public safety" exception to *Miranda* adopted by the United States Supreme Court in *New York v. Quarles*, 467 U.S. 649, (655-56) (1984), and by our Supreme Court in *State v. Widmer*, 2020-NMSC-007, ¶ 1, 461 P.3d 881.

**A.      Preservation**

{10}      Before addressing the merits of this issue, we first consider whether Defendant preserved in the district court the argument he now raises on appeal. Defendant acknowledges that he did not file a motion to suppress prior to trial, as required, in the absence of good cause, by Rule 5-212(C) NMRA. The issue arose

for the first time at trial. Defense counsel objected to the admission of Defendant's answer to Deputy Rodriguez's question about the contents of his motel room on the basis that the State had failed to first establish that Defendant had been given *Miranda* warnings. A bench conference followed. The State conceded in response to the objection that *Miranda* warnings had not been given at the time the question was asked, and argued that Defendant's answer should be admitted into evidence because the public safety exception to *Miranda* applied.

{11}     The defense admitted ineffective assistance in failing to move prior to trial to suppress the statement, offering as good cause misleading information in Deputy Rodriguez's probable cause statement—specifically, Deputy Rodriguez's statement that he learned about the syringe in the room "through general conversation." The State then argued that the public safety exception to *Miranda* recognized by our Supreme Court in *Widmer* applied. *See* 2020-NMSC-007, ¶ 1. The prosecutor stated that the deputies had prior contact with Defendant, and knew that Defendant had previously had a firearm. Defendant did not respond to the State's public safety argument. Without making findings of fact, the district court overruled the objection. The parties agree on appeal that the district court ruled on the merits of the motion to suppress rather than on the untimeliness of the motion. We, therefore, assume that the district court concluded that the public safety exception applied. *See State v. Rivas*, 2017-NMSC-022, ¶ 37, 398 P.3d 299 (noting that "when the trial court rules

5

on the merits of an untimely suppression motion, the court has also implicitly found cause to grant relief from forfeiture of the right to seek suppression").

{12}     On appeal, Defendant argues that the State failed to show that the officers had an "objectively reasonable need to protect the police or the public from immediate danger," the standard set by both *Quarles* and *Widmer* for the application of the public safety exception to *Miranda*. Defendant further contends that a sweep of Defendant's motel room was not required by an immediate danger to the police, and that, in the absence of such immediate danger, the police could not rely on the necessity of a protective sweep to justify a police safety exception to *Miranda* warnings. Our review of the record in the district court shows that Defendant did not make this argument to the district court or indeed present any argument rebutting the State's claim that the public safety exception applied.

{13}     To preserve an issue for appeal, an objection must provide the district court with a factual and legal basis on which to make an informed ruling. *State v. Quiñones*, 2011-NMCA-018, ¶ 23, 149 N.M. 294, 248 P.3d 336. An issue is preserved for appeal if the appellant "fairly invoked a ruling of the trial court on same grounds argued on appeal." *In re Norwest Bank of N.M., N.A.*, 2003-NMCA-128, ¶ 10, 134 N.M. 516, 80 P.3d 98 (internal quotation marks and citation omitted). "Preservation serves the purposes of (1) allowing the trial court an opportunity to correct any errors, thereby avoiding the need for appeal; and (2) creating a record

6

from which this Court can make informed decisions." *Quiñones*, 2011-NMCA-018, ¶ 23. These purposes not having been served here, this issue is not preserved for our review.

**B.      Fundamental Error**

{14}      We next consider Defendant's argument that the district court's failure to suppress Defendant's un-Mirandized admission should be reversed based on fundamental error.

{15}      Review for fundamental error is a two-step process; first, we determine whether error occurred and then determine whether the error was fundamental. *State v. Ocon*, 2021-NMCA-032, ¶¶ 7-8, 493 P.3d 448. In determining whether error occurred, we review the denial of a motion to suppress as a mixed question of fact and law. *State v. Williams*, 2011-NMSC-026, ¶ 8, 149 N.M. 729, 255 P.3d 307. In the absence of findings by the district court, as is the case here, "we will indulge in all reasonable presumptions in support of the district court's ruling." *State v. Gonzales*, 1999-NMCA-027, ¶ 15, 126 N.M. 742, 975 P.2d 355. A presumption is reasonable if it is supported by substantial evidence in the record. *See State v. Slayton*, 2009-NMSC-054, ¶ 11, 147 N.M. 340, 223 P.3d 337 (providing that substantial evidence must support the district court's findings of fact). We will infer that the district court accepted all uncontradicted testimony unless the court

7

specifically indicates that it found the testimony was not credible. *State v. Murry*, 2014-NMCA-021, ¶ 10, 318 P.3d 180.

{16}     Defendant argues that a protective sweep of Defendant's room was not justified by any immediate danger to police officers and that, therefore, the need to conduct a protective sweep cannot form the basis for the State's claim that there was an objectively reasonable, immediate threat to the officers' safety justifying pre-*Miranda* questioning of Defendant. We agree that the totality of the circumstances here do not support the claimed exception to *Miranda*, but do not adopt Defendant's reasoning. We note that there is no claim on appeal that the sweep of Defendant's room violated his rights under the Fourth Amendment to the United States Constitution or under Article II, Section 10 of the New Mexico Constitution. Entering the room to secure it was likely justified by Deputy Nordquist's testimony that he conducted a sweep of the room for the purpose of preserving evidence. This testimony does not establish, as the State contends, that the sweep was for the purpose of addressing a danger to officers based on the possible presence of another person inside the room. In any event, because there is no challenge to the legality of the protective sweep, we do not need to resolve the question of whether a protective sweep was justified in this case. We do agree, however, that precedent regarding the level of danger to police required to justify a protective sweep can help inform our

8

decision about whether the circumstances here posed the kind of immediate danger to police officers required for the public safety exception to *Miranda.*

{17}    In its decision in *Quarles*, the United States Supreme Court adopted the limited public safety exception to *Miranda* at issue in this case. *Quarles* holds that when a question is asked by police officers for the purpose of protecting the public or protecting the police from an objectively reasonable, immediate threat to their safety, the defendant's answer will not be suppressed, even though the defendant is in custody and *Miranda* warnings were not given prior to questioning. *See* 467 U.S. at 658-59. In *Quarles*, the police were pursuing a suspect who police had been told had just committed an armed rape. *Id.* at 651-52. The suspect had entered a nearby supermarket. *Id.* The police chased the suspect through the aisles of the store, and, when they caught him, they handcuffed and frisked him. *Id.* at 652. Police discovered during the frisk that the suspect was wearing a shoulder holster, which was empty. *Id.* Prior to giving *Miranda* warnings, they asked the suspect where the gun was. He stated that the gun was "over there," pointing to some empty cartons nearby. *Id.* at 652. Considering the totality of the circumstances, the United States Supreme Court held that *Miranda* warnings were not required because the police, "in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster." *Id.* at 657. The Supreme Court

9

found that the presence of a gun in a grocery store filled with shoppers endangered members of the public and that the question was necessary to secure the safety of both the officers and the public. *Id.* at 659.

{18}     Our Supreme Court in *Widmer* adopted the *Quarles* public safety exception, holding that the exception will apply so long as the police questioning prior to giving *Miranda* warnings is not "solely to elicit incriminating testimony," and the question is "objectively reasonable based on a need to protect [either the police or the public] from an immediate danger." *Widmer*, 2020-NMSC-007, ¶¶ 35, 37 (internal quotation marks and citation omitted). *Widmer* applied the exception to a question asked by police about items on the suspect's person just prior to conducting a pat-down search incident to arrest. *Id.* ¶ 1. In *Widmer*, our Supreme Court found that the danger to police from needles, weapons, or sharp items on the suspect's person provided an objectively reasonable basis justifying a pre-*Miranda* warnings question to protect the officers from an immediate danger. *Id.* ¶¶ 1, 16 (noting the objectively reasonable officer concern that a needle or sharp object might injure him and expose him to bodily fluids). As in *Quarles*, the exigency arose "in the very act of apprehending a suspect." 467 U.S. at 657.

{19}     In this case, in contrast to both *Quarles* and *Widmer*, there was no objectively reasonable need to protect officers or the public from an immediate danger incident to Defendant's arrest. Uncontradicted evidence established that Defendant was

10

handcuffed and had already been searched, that Defendant was in the custody of Deputy Rodriguez and had been taken to the front of the motel, near the motel office, at the time the question was asked about the contents of his motel room. There was no evidence presented that Defendant possessed a weapon or that he had any dangerous objects on his person at the time he was arrested. Under the circumstances, both the timing of the question and the circumstances known to the officers at the time the question was asked weigh against the conclusion that the question was prompted by an immediate necessity to protect the officers or the public.

{20} We assume, consistent with our standard of review, that the officers believed it was possible that someone remained in the room. This fact, however, does not establish the objectively reasonable immediate danger to officers required by *Quarles* and *Widmer*. Looking to the cases Defendant cites on the justification required to conduct a protective sweep, these cases require affirmative evidence that someone is in the space to be searched, not simply a suspicion that someone might be there. *See United States v. Colbert*, 76 F.3d 773, 777-78 (6th Cir. 1996) (stating that a protective sweep was not justified where officers had no information anyone else was in the defendant's apartment); *see also Maryland v. Buie*, 494 U.S. 325, 337 (1990) (recognizing an exception to the Fourth Amendment requirement of a search warrant where officers have a reasonable belief based on facts that "the area

11

to be swept harbors an individual posing a danger to those on the arrest scene"), *superseded by rule as stated in State v. Laboo*, 933 A.2d 4 (N.J. Super. Ct. App. Div. 2007). No evidence affirmatively establishing the presence of another person inside the motel room was introduced in this case. And although the State argues that Defendant was suspected of leaving a gun in the room, there is likewise no evidence in the record to support that claim. Rather, the only discussion of whether Defendant had a weapon came from the prosecutor. During the bench conference, the prosecutor asserted that the officers had previous dealings with Defendant and knew him to possess firearms. The prosecutor did not elicit testimony or introduce evidence to support this assertion during trial. *See State v. Garcia*, 1978-NMCA-109, ¶ 4, 92 N.M. 730, 594 P.2d 1186 ("[S]tatements of counsel are not evidence."); *Slayton*, 2009-NMSC-054, ¶ 11 (providing that the district court's decision on suppression must be supported by substantial evidence in the record).

{21}     A similar evaluation was employed by this Court in *State v. Trangucci*, to determine whether asking an un-Mirandized suspect arrested in his bedroom about the location of his gun implicated the public safety exception. 1990-NMCA-009, ¶ 10, 796 P.2d 606. The suspect was arrested in a bedroom for a violent felony committed with a gun the previous night. *Id.* ¶¶ 3-5. When the police pulled the defendant out from under a dresser where he was hiding, they asked, "Where is the gun?" *Id.* ¶ 5. This Court applied the public safety exception. *Id.* ¶ 13. This Court

observed that "[t]he standard for application of the public safety exception to *Miranda* warnings" under *Quarles* is "a reasonable determination of an objective, immediate threat to the safety of the public [or the police]." *Id.* ¶ 10. Because substantial evidence supported the district court's finding that the police expected to find a gun and "that the situation had not stabilized or been secured for everybody's safety" when the defendant was questioned, this Court held that the district court properly denied the defendant's motion to suppress under the police and/or public safety exception to *Miranda*. *Id.* ¶ 13.

{22}     In this case, where Defendant had been arrested, searched, handcuffed, and moved to the front of the motel near the officers' vehicle, distant from his motel room, where the officers in over an hour of surveillance had seen no one but Defendant enter or leave the motel room, where there was no evidence in the record concerning the nature of the warrant for Defendant's arrest, and no evidence about Defendant's prior possession of a weapon, the district court's application of the public safety exception based on the State's argument that the officers believed someone else might be in the room is not consistent with either *Quarles*, *Widmer*, or *Trangucci*. Even when the evidence is construed favorably to support the district court's decision, substantial evidence in the record does not establish the kind of exigent circumstances incident to an arrest, circumstances posing an immediate danger to officers or the public, necessary to support un-Mirandized questioning.

13

Under the totality of the circumstances, questioning Defendant about the contents of his motel room was not "objectively reasonable based on a need to protect [either the police or the public] from an immediate danger." *Widmer*, 2020-NMSC-007, ¶¶ 35, 37 (internal quotation marks and citation omitted). We conclude that the district court erred in failing to suppress Defendant's un-Mirandized admission.

{23} The conclusion that there was error in the district court's admission of the Defendant's un-Mirandized statement does not conclude our analysis, however. We must address whether the error in the admission of Defendant's un-Mirandized statement was fundamental error. "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. The error must "shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted).

{24} Having reviewed the other evidence in the record in this case, we conclude that the admission of Defendant's statement did not implicate a fundamental unfairness in the system of justice. First, we note that before Defendant's un-Mirandized statement was admitted into evidence through Deputy Rodriguez's testimony, Deputy Nordquist had already testified to the jury that Defendant had told

14

his partner, Deputy Rodriguez, there was a syringe in the room. Second, Defendant objected only to his un-Mirandized admission and did not move to suppress the syringe or its contents, discovered in plain view in the sweep of the motel room. Therefore, the jury would have heard, in any event, testimony that the officers found a syringe loaded with methamphetamine in plain sight in Defendant's motel room. Finally, despite the admission of his answer to Deputy Rodriguez's question, Defendant was still able to argue to the jury that Defendant's admission that the syringe belonged to him was ambiguous or was reported incorrectly by Deputy Rodriguez and that he had said only that there was "a syringe" in the room. Defendant argued in closing argument that others had access to the motel room and that the evidence did not establish beyond a reasonable doubt that the syringe had not been left in the motel room by a prior renter, motel staff, or by someone who wanted to incriminate him. We therefore conclude that the error by the district court does not meet the high standard required for fundamental error.

**II.** **The District Court's Denial of Defendant's Motion for a Mistrial Based on a Witness's Comment on His Post-*Miranda* Silence Was Not an Abuse of Discretion**

{25} Defendant argues that the district court erred in denying his motion for a mistrial based on a comment on his post-*Miranda* silence made by Deputy Rodriguez during cross-examination by the defense. We review the denial of a

mistrial for an abuse of discretion. *State v. O'Neal*, 2008-NMCA-022, ¶ 28, 143 N.M. 437, 176 P.3d 1169.

{26} The Fourteenth Amendment to the United States Constitution's Due Process Clause protects against *prosecutorial* comment on a defendant's post-*Miranda* exercise of their right to remain silent. *See State v. DeGraff*, 2006-NMSC-011, ¶ 12, 139 N.M. 211, 131 P.3d 61; s*ee also State v. Foster*, 1998-NMCA-163, ¶ 11, 126 N.M. 177, 967 P.2d 852 (providing that a prosecutor is not permitted to elicit statements from a witness that the defendant invoked his right to remain silent and is not permitted to use a defendant's silence to impeach their credibility or create an inference of guilt in the minds of the jury).

{27} Here, however, the prosecutor did not elicit the comment at issue. Rather, the witness's comment on Defendant's silence was made during cross-examination by defense counsel. Defendant did not object at the time the statement was made, only later moving for a mistrial when the court brought the statement to his attention. Although the district court correctly found the statement to be a comment on Defendant's silence and to be unresponsive to the question asked by defense counsel, the district court denied the motion for a mistrial, instead giving a curative instruction.

{28} We find no abuse of discretion in the district court's decision that a curative instruction was adequate to remedy any prejudice to Defendant. The comment

complained of was an isolated comment; Defendant did not timely object; the prosecutor did not solicit the comment and did not later direct attention to the comment by asking related questions or by referring to it in closing argument. We, therefore, are not persuaded that any prejudice was not remedied by a curative instruction. *See State v. Molina*, 1984-NMSC-038, ¶ 5, 101 N.M. 146, 679 P.2d 814 ("It is not true, however, that any comment on the defendant's silence must result in a mistrial, or a reversal of the defendant's conviction." (emphasis, internal quotation marks, and citation omitted)); *accord State v. Wildgrube*, 2003-NMCA-108, ¶¶ 23-24, 134 N.M. 262, 75 P.3d 862 (holding that when a police officer made an inadvertent comment regarding the defendant's post-*Miranda* silence and the prosecutor did not exploit the reference by asking related questions or referring to the comment in closing argument, and no timely objection was made by the defendant, reversal was not required). Accordingly, Defendant has failed to demonstrate error on this basis.

**III.    The District Court Did Not Abuse Its Discretion in Giving a Corrective Instruction to Disregard Hearsay Evidence**

{29}    Defendant contends that the district court's curative instruction was inadequate to prevent prejudice from Deputy Rodriguez's hearsay testimony reporting that he had been told by the motel's desk clerk that Defendant had not rented Room 201. Defendant claims that reversal is required. We note that "[g]enerally, a prompt admonition from the court to the jury to disregard and not

17

consider inadmissible evidence sufficiently cures any prejudicial effect which might otherwise result." *State v. Newman*, 1989-NMCA-086, ¶ 19, 109 N.M. 263, 784 P.2d 1006. We are not persuaded that any exception to this rule applies here.

{30}    Our review is for abuse of discretion. *See State v. Arvizo*, 2021-NMCA-055, ¶ 29, 499 P.3d 1221 ("[A] motion for mistrial is addressed to the sound discretion of the district court and will not be disturbed absent a showing of abuse of discretion."). We see no abuse of discretion in the district court's determination that an instruction to the jury to disregard the hearsay testimony described above would avoid prejudice to Defendant. Defendant never objected to the protective sweep or subsequent search of the motel room, so the jury was not required to determine whether Defendant had a Fourth Amendment expectation of privacy in the room. The desk clerk's statement is only tangentially related, if related at all, to Defendant's defense that the syringe had been left in the room by a prior tenant, by cleaning staff, or by someone who wanted to set him up. We therefore see no abuse of discretion in the district court's reliance on a corrective instruction, rather than a mistrial.

**IV.    Defendant's Claims of Prosecutorial Misconduct in Closing Argument Do Not Amount to Fundamental Error**

{31}    Defendant alleges that the prosecution committed misconduct in its closing arguments by (1) referring to evidence outside the record, (2) referencing hearsay that had been excluded from the record, and (3) misstating the law on possession. Defendant did not object to any part of the State's closing arguments. Our review,

therefore, is for fundamental error. *See State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728.

{32} To find fundamental error based on misconduct in closing argument, even if the comments were erroneous, "we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348 (internal quotation marks and citation omitted). "As with any fundamental error inquiry, we will upset a jury verdict only (1) when guilt is so doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process." *Id.*

{33} Even assuming, without deciding, that the prosecution made erroneous and potentially misleading statements during closing about whether Defendant had paid to use the motel room, we are not persuaded that the information was a significant factor in the jury's deliberations. As we have already discussed, there was other, more direct evidence of Defendant's possession of the loaded syringe apart from any comment on Defendant's alleged failure to have paid rent for his room. Deputy Nordquist had testified that he had been told by Deputy Rodriguez that Defendant admitted there was a syringe in the room. This testimony, together with the seizure of the syringe itself, and the stipulated laboratory test identifying the contents as

19

methamphetamine, provided overwhelming evidence of Defendant's possession of methamphetamine. The prosecution's comments dealt with secondary matters of little relevance to the questions before the jury.

**{34}** We therefore are not persuaded that the circumstances here rise to the level necessary to support the application of the doctrine of fundamental error.

**V.     Cumulative Error**

**{35}** Finally, Defendant argues that the cumulative effect of the various alleged errors outlined above denied him a fair trial. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC 014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. "Cumulative error has no application if the district court committed no errors and if the defendant received a fair trial." *State v. Guerra*, 2012-NMSC-014, ¶ 47, 278 P.3d 1031. Because we have concluded the district court committed no reversible errors in this case, we conclude that there is no cumulative error. *See id.* ¶¶ 47-48.

**CONCLUSION**

{36}    We affirm Defendant's conviction.

{37}    **IT IS SO ORDERED.**


_____
**JANE B. YOHALEM, Judge**


**WE CONCUR:**


_____
**MEGAN P. DUFFY, Judge**


_____
**KATHERINE A. WRAY, Judge**